**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
WILLIAM E. SAMPSON,            )
                               )
       Plaintiff,          )
                               )
  v.                           )    Civil Action No. 04-1767 (GK)
                               )
WASHINGTON METROPOLITAN AREA   )
TRANSIT AUTHORITY, <u>et</u> <u>al.</u>,   )
                               )
       Defendants.         )
_____)

## <u>MEMORANDUM OPINION</u>

Plaintiff, William E. Sampson, brings this suit alleging violations of the District of Columbia Whistleblower Protection Act, D.C. Code §§ 1.615.54 <u>et</u> <u>seq.</u> ("DC WPA"), violations of his First Amendment rights, and common law intentional infliction of emotional distress for acts taken against him after he notified several WMATA supervisors and superintendents about potential safety hazards in the workplace. Defendants are Washington Metropolitan Area Transit Authority ("WMATA"), Plaintiff's employer, and six individual current and former WMATA employees: Gairy O. Johnson, Herbert S. Bullock, James R. Brown, R. Sean Burgess, Ernest Barber, Jr., and Steven Moseley. This matter is before the Court on <u>pro</u> <u>se</u> Defendant Moseley's Motion to Dismiss and Defendant WMATA's Motion to Dismiss Count II (DC WPA) and Count III (First Amendment) of the Complaint. Upon consideration of the Motions, Oppositions, Replies, and the entire record herein, and

for the reasons stated below, Defendant Moseley's Motion is **denied** and Defendant WMATA's Motion is **granted**.

### I.   BACKGROUND[1]

On or about August 16, 1999, Plaintiff began working for WMATA as a mechanic's helper in communications with the Radio Maintenance Department.  Some of Plaintiff's responsibilities related to the "safety of both bus operations and patrons through radio and other means of communication."  Compl. ¶ 13.

During the Spring and Summer of 2002, WMATA received nearly one hundred new buses.  None of the buses had radios.  Plaintiff questioned his supervisor, Gairy Johnson, the area supervisor, Herbert Bullock, and the street supervisor, Gary Speicher, regarding whether the lack of radios in the new buses posed a safety hazard.  None of them provided a satisfactory response.

In the end of August 2002, Plaintiff distributed a "bus safety memorandum" he had written to the head of safety at WMATA, Frank Goodine, and several others, including Defendants Johnson and Barber.  Plaintiff asserts that from that point forward, WMATA retaliated against him for voicing his safety concerns.  For example, he was told to "drop the matter," he was subjected to "verbal abuse," and in November 2002, he was improperly disciplined

---

[1] For purposes of ruling on a motion to dismiss, the factual allegations of the complaint are presumed to be true and liberally construed in favor of the plaintiff. Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002).  Therefore, the facts set forth herein are taken from Plaintiff's Complaint.

for "defacing" WMATA property after he indicated on a safety meeting "sign up sheet" that nobody had attended. Id. ¶¶ 17-25.

Around that time, Plaintiff left a message on the general manager's hotline that handled retaliation, oversight, and mismanagement. He also told Ruth O'Hara, the executive assistant to the head of WMATA's safety department, that he thought WMATA was retaliating against him. He later emailed Ms. O'Hara information relevant to his complaint. WMATA initiated an investigation, and Plaintiff was eventually introduced to WMATA's Auditor General, James Stewart.

On February 6, 2003, Johnson, Plaintiff's supervisor, posted a notice about an "administrative investigation" that was initiated as a result of Plaintiff's complaints. Id. ¶ 32. Defendant Moseley, one of Plaintiff's co-workers, began telling other employees that Plaintiff was responsible for the investigation, made comments such as "what we should do about the terrorist in here" and the "war in here," and began warning other employees about getting involved with Plaintiff. Id. ¶¶ 32-36.

Between August 18 and September 3, 2003, Plaintiff was called into meetings with two different superintendents who each questioned him about "what he wanted." Id. ¶¶ 37-38. Around that time, Plaintiff requested a transfer to avoid any potential physical harm.

3

On September 17, 2003, Plaintiff sent an e-mail to Johnson expressing his concerns regarding various safety issues, including lack of training, lack of adequate procedures, and potentially hazardous conditions. The next day, Plaintiff was notified that he would be transferred to a different facility, but that he would have to complete a "WMATA-sponsored Effective Workplace Behavior course." Id. ¶ 40. He was then escorted off the premises.

Between March 12 and March 26, 2004, Plaintiff sent three additional emails to other officials regarding his safety concerns.

On April 27, 2004, Plaintiff received a disciplinary letter for allegedly leaving his designated work location without permission. He contends this was in retaliation for his whistleblower activities. Finally, throughout his employment with WMATA, Plaintiff applied for a large number of jobs. He claims his applications were ignored or rejected because of his whistleblower activities.

**II. ANALYSIS**

On October 14, 2004, Plaintiff's case was removed to this Court from the Superior Court of the District of Columbia. Plaintiff's Complaint alleges common law intentional infliction of emotional distress, violations of the District of Columbia Whistleblower Protection Act, D.C. Code Ann. Section 1.615.54 et seq., and violations of his First Amendment right of free speech.

4

**A. Defendant Moseley's Motion to Dismiss**

In his Motion to Dismiss, pro se Defendant Steven Moseley claims Plaintiff's statements against him were "inadmissible," because "[t]he alleged statements made by me (the defendant) by the plaintiff are false, and based on hearsay and only demonstrates [sic] the plaintiff's malicious forms of continuous harassment." Moseley's Mot. to Dismiss at 1; Moseley's Reply at 1. In his Reply, Moseley cited two cases which are inapposite.[2] He offered nothing else in support of his Motion.

Defendant Moseley's Motion essentially disputes the accuracy of the facts upon which Plaintiff's Complaint relies. For purposes of ruling on a motion to dismiss, the factual allegations of the Complaint must be presumed to be true and liberally construed in favor of Plaintiff. Browning, 292 F.3d at 242. The accuracy of the facts asserted in the Complaint may only be challenged at a later stage in the litigation. Therefore, Defendant Moseley's Motion to Dismiss must be **denied** at this early stage of the litigation.

**B. Defendant WMATA's Motion to Dismiss**

Defendant WMATA filed a Motion to Dismiss the DC WPA claim on the grounds that: 1) WMATA is immune from suit for the DC WPA

---

[2] Moseley cited Blancha v. Raymark Indus., 972 F.2d 507, 516 (3d Cir. 1992) (discussing standard for exclusion of evidence under Fed. R. Evid. 403) and U.S. v. Hitt, 981 F.2d 422, 424-25 (9th Cir. 1992) (same).

claim, and therefore the Court lacks jurisdiction; 2) WMATA cannot be held subject to the laws of only one signatory to the Washington Metropolitan Area Transit Authority Compact ("WMATA Compact"); and, 3) the DC WPA does not protect WMATA employees.  WMATA also moved to dismiss the First Amendment claim because Plaintiff failed to plead any basis for relief, and because 42 U.S.C. § 1983 does not apply to WMATA, even if it had been properly pled.[3]

Our analysis is governed by the rule that a "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  As noted above, the factual allegations of the complaint must be presumed true and liberally construed in favor of the plaintiff.  Browning, 292 F.3d at 242.

---

[3] WMATA has not moved to dismiss Count I (intentional infliction of emotional distress) of the Complaint on the assumption that it was not included in that Count.  WMATA's Mot. to Dismiss ("WMATA's Br.") at 1.  Plaintiff failed to respond to this argument in his Opposition.  Although Plaintiff makes general assertions about his tort claim, he never argues that it was asserted against WMATA.  Pl.'s Opp'n to WMATA's Mot. to Dismiss ("Pl.'s Opp'n") at 4-5.

Plaintiff's Complaint is totally unclear on this point. The Court will rely on each of the paragraphs within Count I for intentional infliction of emotional distress, in which Plaintiff specifically limited the claim to the individual Defendants. Compl. ¶¶ 47-49.  Plaintiff may attempt to amend his Complaint in order to clarify the situation.

### 1. Plaintiff's WPA Claim Against WMATA Must Be Dismissed[4]

WMATA was created by a compact between Maryland, Virginia, and the District of Columbia, which was approved by the United States Congress. Pub. L. No. 89-774, 80 Stat. 1324 (1966) (codified as amended at D.C. Code Ann. § 1-2431 et seq.). As an interstate compact entity, WMATA enjoys sovereign immunity. Beebe v. WMATA, 129 F.3d 1283, 1287 (D.C. Cir. 1997). A waiver of sovereign immunity exists "only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." Watters v. WMATA, 295 F.3d 36, 40 (D.C. Cir. 2002).

As WMATA points out, under general principles of interstate compact law, one party to an interstate compact may not subject the entity created by the compact to its own laws without the other parties' express consent. Lucero-Nelson v. WMATA, 1 F. Supp. 2d 1, 7 (D.D.C. 1998) (holding that WMATA was immune from claims brought under the DC Human Rights Act and noting that "pursuant to the WMATA Compact, one signatory may not impose its legislative enactment upon the entity created by it without the express consent of the other signatories and of the Congress of the United States.") (citing OPIEU, Local 2 v. WMATA, 724 F.2d 133, 139 (D.C.

---

[4] Given the Court's ruling on the inapplicability of the DC WPA to WMATA, there is no need to reach the issues of either immunity or the scope of the WPA claim.

Cir. 1983)); C.T. Hellmuth & Assocs., Inc. v. WMATA, 414 F. Supp. 408, 410 (D. Md. 1976) (holding that "Maryland may not unilaterally subject WMATA to the provisions" of the Maryland Public Information Act).

Because there is no indication that Virginia and Maryland have consented to the application of District of Columbia law, and indeed Plaintiff does not so argue, the DC WPA does not apply to WMATA.

### 2. Plaintiff's First Amendment Claim Against WMATA Must Be Dismissed

In Count III of his Complaint, Plaintiff asserts a First Amendment claim against WMATA.[5] WMATA points out that Plaintiff's Complaint does not assert a "remedial statute authorizing the federal courts to grant relief." WMATA's Br. at 12. That is, Plaintiff did not rely on 42 U.S.C. § 1983 as a basis of liability. This failure, however, is not fatal to Plaintiff's claim. See Morris v. WMATA, 702 F.2d 1037, 1041-42 (D.C. Cir. 1983) ("Morris' free speech claim relies directly on the First Amendment as the source of the remedy sought . . . we treat Morris' claim on appeal as if it were an action under section 1983.")

Nonetheless, Defendant is correct that WMATA is immune from suit under 42 U.S.C. § 1983. Atraqchi v. WMATA, 99cv702 (GK) (D.D.C.), July 3, 2000, Mem. Op. at 6; Lucero-Nelson, 1 F. Supp. 2d

---

[5] Plaintiff did not assert this claim against the individual Defendants.

at 7 (holding that "plaintiff's § 1983 claim fails as a matter of law for two reasons: (1) Section 1(e) of the WMATA compact between Maryland, Virginia, and the District of Columbia exempts WMATA from § 1983 claims and (2) only "persons are subject to suit under § 1983 . . . [t]he Court is persuaded that as an arm of the state WMATA is not a 'person' within the meaning of the statute.") (internal citations omitted); see Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) (holding that arm of state is not a "person" under section 1983, pursuant to Eleventh Amendment).

In response to WMATA's arguments, Plaintiff asserts, implicitly conceding the validity of those arguments, that, "[t]o the extent that 42 U.S.C. § 1983 requires that additional WMATA officials be joined in light of Will v. Michigan Dep't of State Police . . . to seek prospective relief, plaintiff requests leave of court to add such defendant or defendants." Pl.'s Opp'n at 7. Local Civil Rule 7(i) and Local Civil Rule 15.1 provide that, "a motion for leave to file an amended pleading shall be accompanied by an original of the proposed pleading as amended." Since November 2004, when Plaintiff filed his Opposition, he has not filed the requisite motion and amended complaint. At this point, Plaintiff's First Amendment claim against WMATA must be dismissed without prejudice, and Plaintiff is free to move to file an amended complaint in conformity with the Local Rules.

**III. CONCLUSION**

For the foregoing reasons, Defendant Moseley's Motion to Dismiss is **denied**, and Defendant WMATA's Motion to Dismiss is **granted**.

An Order will issue with this Memorandum Opinion.


August 9, 2005                    /s/
                                 GLADYS KESSLER
                                 U.S. District Judge


**Copies to:  attorneys of record via ECF and**

**Steven Moseley**
5218 Darien Road
Baltimore, MD 21206