**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

|  |  |
|---|---|
| William E. Sampson, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )    Civil Action No. 04-1767 (GK) |
| | ) |
| Washington Metro. Area | ) |
| Transit Authority, <u>et</u> <u>al.</u> | ) |
| | ) |
|     Defendants. | ) |

---

<u>MEMORANDUM OPINION</u>

Plaintiff, William E. Sampson, brings this suit alleging intentional infliction of emotional distress and violation of his First Amendment rights based on actions taken against him after he notified several of his supervisors and managers at Washington Metropolitan Area Transit Authority ("WMATA") of, <u>inter alia</u>, potential safety hazards in the workplace. Defendants are WMATA and eight individual current or former WMATA employees.[1]

This matter is before the Court on Motions for Summary

---

[1] Defendants are WMATA, Herbert S. Bullock, James R. Brown, Gairy O. Johnson, R. Sean Burgess, Alan G. Nabb, John B. Catoe, Jr., Ernest Barber, Jr., and Steven Moseley.  Former WMATA Chief Executive, Richard A. White, was named in Plaintiff's Amended Complaint, but Defendant Catoe is substituted in his place pursuant to Rule 25(d)1 of the Federal Rules of Civil Procedure.
Plaintiff's First Amendment claims (Count II) are not asserted against Defendants Barber or Moseley.  Defendants Nabb and Catoe are only named in their official capacities.  Pl.'s Amend. Compl. at ¶¶ 5-6.

1

Judgment by Defendants WMATA [#42] and Barber [#44].[2]  Upon consideration of the Motions, Oppositions, Replies, controlling authority, and the entire record herein, and for the reasons stated below, Defendant WMATA's Motion for Summary Judgment [#42] is **granted** and Defendant Barber's Motion for Summary Judgment [#44] is **granted.**

## I.    BACKGROUND[3]

On or about August 16, 1999, Plaintiff began working for WMATA as a mechanic's helper in communications with the Radio Maintenance Department.   Plaintiff's troubles at WMATA began shortly thereafter.

Some of Plaintiff's responsibilities related to the "safety of both bus operations and patrons through radio and other means of communication."  Pl.'s Amend. Compl. at ¶ 14.  Late in 1999, Plaintiff complained to his supervisors, Defendants Gairy Johnson and Herbert  Bullock, about falsified work tickets and inadequate "Y2K" preparations.  His supervisors ignored his complaints, and he believes he was subjected to random drug testing in April and May

---

[2]Counsel for WMATA is also representing Defendants Bullock, Brown, Johnson, Nabb, and Catoe in their individual and official capacities.  Defendant Moseley was proceeding <u>pro</u> <u>se</u> until March 30, 2007.  The Court denied his Motion to Dismiss [#46] and his Motion for Summary Judgment [#50] in a March 20, 2007 Memorandum Order [#59].

[3]Summary judgment may be granted only when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

of 2000 in retaliation for bringing these issues to their attention.  Pl.'s Opp'n [#53], Exhibit 1 at ¶¶ 11-16.

In March of 2001, hostilities developed between Plaintiff and one of his co-workers, Defendant Moseley.  According to his Declaration, Plaintiff reported to Johnson that Moseley had been sleeping on duty, and Johnson told Moseley about the accusation. Id. at ¶¶ 17-19.  Plaintiff claims that Moseley responded by screaming obscenities at him, threatening him, and attempting to provoke a fight.  Id. at ¶ 19.  Plaintiff further claims that Moseley's behavior towards him was not an isolated incident, and he alleges that Johnson did not take efforts to remedy the situation. Id. at ¶ 24.

Around the same time, Plaintiff also had a disagreement with Johnson over installation of WMATA's radio system.  According to his Declaration, Plaintiff complained to Johnson that the radio system had not been adequately tested, and alterations to the system had not been recorded on engineering plans and schematics. Id. at ¶¶ 30-32.  Plaintiff unsuccessfully attempted to bring an internal Equal Employment Opportunity ("EEO") complaint based on Johnson's alleged refusal to adequately respond to Plaintiff's concerns.  Id.  WMATA's EEO officers refused to accept the complaint because they felt the issue did not involve an EEO matter.  Id.  Plaintiff also complained to the EEO officers about Defendant Moseley's behavior towards him.

Between March and April of 2001, Plaintiff repeatedly contacted the EEO Office to follow up on his complaints about Defendant Moseley. Plaintiff claims that the EEO Office was unresponsive and ultimately concluded his claims were unsubstantiated. Id. at ¶¶ 34-49. Plaintiff subsequently began applying for jobs in other WMATA departments, but he claims that Johnson subverted his efforts by failing to submit his applications and by failing to advise him of a scheduled interview. Id. at ¶¶ 34-49, 56-58. According to his Declaration, Plaintiff brought his concerns to his union representative, Defendant Earnest Barber. Id. at ¶ 41. Barber allegedly told Plaintiff that the union could not help him. Id.

In November of 2001, one of Plaintiff's co-workers, Larry Holbeck, accused Plaintiff of stealing his wedding ring. Transit Police responded and investigated the incident, but the responding officer determined that Holbeck was mistaken. Plaintiff asked Defendant Brown to note the exoneration in his personnel file, and he requested an apology from Holbeck. Plaintiff claims Brown told him that he could not accommodate the request and stated that the incident had been blown out of proportion. Id. at ¶ 59. According to Plaintiff's Declaration, a co-worker told him that Brown subsequently "squashed" his application for a clerk's position at WMATA. Id. at ¶ 61.

During the Spring and Summer of 2002, WMATA received nearly

one hundred new buses.   None of the buses had radios.   Plaintiff questioned Johnson, Bullock, and the street supervisor, Gary Speicher, regarding whether the lack of radios in the new buses posed a safety hazard.   None of them provided a satisfactory response.   Id. at ¶ 67.

In August 2002, Plaintiff wrote a "bus safety memorandum" and distributed it to the head of safety at WMATA, Frank Goodine, as well as Johnson, Defendant Barber, and several others.   Plaintiff alleges that WMATA retaliated against him for voicing his safety concerns.   For example, Plaintiff claims he was told to "drop the matter," he was subjected to "verbal abuse," and in November 2002, he was improperly disciplined for "defacing" WMATA property after he indicated on a safety meeting "sign up sheet" that nobody had attended.   Pl.'s Amend. Compl. at ¶¶ 19-26.

Plaintiff again sought union help, but claims that Barber attempted to dissuade him from pressing the issue by noting that he could get hurt if his co-workers lost their jobs.   Pl.'s Opp'n [#53], Exhibit 1 at ¶¶ 83-85.   Barber also refused to file a grievance on Plaintiff's behalf and allegedly told him that nothing could be done unless WMATA fired him.   Id. at 95

In November of 2002, Plaintiff left a message on the general manager's hotline that handled retaliation, oversight, and mismanagement.   He also told the executive assistant to the head of WMATA's safety department, Ruth O'Hara, that he thought WMATA was

retaliating against him.   He later e-mailed O'Hara information relevant to his complaint.   WMATA initiated an investigation, and Plaintiff was eventually introduced to WMATA's Auditor General, James Stewart.   In addition to information about the alleged retaliation against him, Plaintiff provided information to the auditors about employees improperly using WMATA resources.

On February 6, 2003, Johnson posted a notice about an "administrative investigation" that was initiated as a result of Plaintiff's complaints.  Pl.'s Amend. Compl. at ¶ 33.  Defendant Moseley began telling other employees that Plaintiff was responsible for the investigation.  Moseley also made comments in reference to Plaintiff such as "what we should do about the terrorist in here" and the "war in here," and began warning other employees about getting involved with Plaintiff.  Id. at ¶¶ 33-36. On at least two occasions thereafter, according to Plaintiff, Defendant Moseley made remarks to WMATA employees, in Plaintiff's presence, about how accidents can happen on their job site.  Id. at ¶ 37.

Between August 18, 2003 and September 3, 2003, Plaintiff was called into meetings with two different superintendents who each questioned him about "what he wanted."   Id. at ¶¶ 38-39. Plaintiff requested a transfer to avoid any potential physical harm.

On September 17, 2003, Plaintiff sent an e-mail to Johnson

expressing his concerns regarding various safety issues, including lack of training, lack of adequate procedures, and potentially hazardous conditions.  The next day, Plaintiff was notified that he would be transferred to a different facility, but that he would have to complete a "WMATA-sponsored Effective Workplace Behavior course."  Id. at ¶ 40.  He was then escorted off the premises.

After the transfer, Plaintiff claims that WMATA continued to retaliate against him.  Specifically, Plaintiff claims he was denied a promotional opportunity, subjected to random drug testing, and issued disciplinary letters.  Pl.'s Opp'n [#53], Exhibit 1 at ¶¶ 149-165.

In September of 2004, Plaintiff injured his foot on the job. Plaintiff claims that WMATA did not initially follow its workman's compensation procedures.  Id. at 167-174.  However, Defendant Nabb ultimately called Plaintiff in for a meeting and gave him a workman's compensation claim number.  Plaintiff alleges that Nabb forced him to come to WMATA's offices for the meeting while he was in pain due to the injury and bronchitis.  Id.  Plaintiff characterizes his foot injury as a "temporary total disability." Id. at 185.

## II.  STANDARD OF REVIEW

Summary judgment will be granted when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits or declarations, show that there is no

genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  <u>See</u> Fed. R. Civ. P. 56(c).  A fact is "material" if it might affect the outcome of the action under the governing law.  <u>Anderson v. Liberty Lobby, Inc.</u> 477 U.S. 242 (1986).  The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

In determining whether the movant has met this burden, a court must consider all factual inferences in the light most favorable to the non-moving party.  <u>McKinney v. Dole</u>, 765 F.2d 1129, 1135 (D.C. Cir. 1985); <u>see</u> <u>also</u> <u>Anderson</u>, 477 U.S. at 255.  Once the moving party makes its initial showing, however, the nonmoving party must demonstrate "specific facts showing that there is a genuine issue for trial."  <u>Celotex</u>, 477 U.S. at 324; <u>McKinney</u>, 765 F.2d at 1135. Accordingly, the nonmoving party must provide evidence that would permit a reasonable jury to find in his or her favor.  <u>Liberty Lobby</u>, 477 U.S. at 255-56.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  <u>Anderson</u>, 477 U.S. at 249-50 (citations omitted).

## III. ANALYSIS

### A.   Intentional Infliction of Emotional Distress

To establish a cause of action for intentional infliction of emotional distress a plaintiff must 1) show extreme and outrageous conduct on the part of the defendant which 2) either intentionally

or recklessly 3) caused the plaintiff severe emotional distress. See <u>Larijani v. Georgetown Univ.</u>, 791 A.2d 41, 44 (D.C. 2002).

### 1. Intentional Infliction of Emotional Distress Claims Against WMATA, Bullock, Brown, Johnson, Nabb, and Catoe

WMATA enjoys immunity from claims for torts occurring "in the performance of a governmental function." D.C. Code § 9-1107.01(80). Our Court of Appeals applies a two-prong test to determine whether a particular action is "governmental" and, therefore, entitled to immunity: first, courts are to determine whether the challenged action is quintessentially governmental (e.g., operation of a police force); second, if the challenged action is not quintessentially governmental, courts are to determine whether the action is "discretionary," because "discretionary activities are governmental." <u>Abdulwali v. Wash. Metro. Area Transit Authority</u>, 315 F.3d 302, 304 (D.C. Cir. 2003).

WMATA's actions are discretionary, as opposed to ministerial, if they are not prescribed by a statute, regulation, or policy. <u>Beebe v. Wash. Metro. Area Transit Authority</u>, 129 F.3d 1283, 1287-88 (D.C. Cir. 1997) (citations and quotations omitted). If an action is not prescribed, courts determine whether WMATA's actions are "grounded in social, economic, or political goals." <u>Id.</u> (citations and quotations omitted).

The Court of Appeals has also recognized that employment decisions are frequently discretionary and governmental in nature

because they "require consideration of numerous factors, including budgetary constraints, public perception, and economic conditions"; however, not all actions related to employment are shielded from review. Id. (citations and quotations omitted). WMATA's decisions concerning training and supervision of its employees are plainly discretionary and immune from judicial review. Id. Additionally, WMATA officials enjoy immunity in their individual capacities for discretionary acts taken within the scope of their duties.

It is difficult to tell exactly which actions and omissions form the basis of Plaintiff's claim of intentional infliction of emotional distress against WMATA, Bullock, Brown, Johnson, Nabb, and Catoe. Plaintiff alleges that WMATA failed to take "corrective or disciplinary" actions against employees who threatened, harassed, intimidated, and abused him, and he cites that failure as part of the basis for his emotional distress claim. Pl.'s Amend. Compl. at ¶ 51. Plaintiff's Amended Complaint also states that Johnson, Bullock, and Brown, "engaged in a pattern of harassment, intimidation, and abuse," but he does not allege that these individuals threatened any violence against him. Id. ¶ 48.

Some of the specific facts at issue can be gleaned from Plaintiff's sixty-six page declaration in which he claims that WMATA management failed to heed his concerns about safety and resource issues, referred him to employee counseling, issued disciplinary letters to him, failed to discipline co-workers who

allegedly threatened him, scheduled him to work with individuals with whom he did not get along, denied his requests for promotions, subjected him to random drug tests, called the transit police to investigate Holbeck's theft allegation, and generally treated him with discourtesy and disrespect.  Notwithstanding Plaintiff's characterization of these actions as harassment, intimidation, and abuse, they are plainly the type of discretionary, supervisory, and policy decisions that the Court may not second guess.  <u>Beebe</u>, 129 F.3d at 1287-88; <u>see also</u> <u>Hopps v. Wash. Metro. Area Transit Authority</u>, No.  03-01830, 2007 U.S. Dist. LEXIS 22863, at *32-*35 (D.D.C. March 30, 2007) (holding sovereign immunity barred an employee's emotional distress claim against WMATA that was based on job assignments, performance reviews, disciplinary measures, and other supervisory actions).

With respect to claims against Johnson, Bullock, and Brown in their respective individual capacities, Plaintiff does not allege that they lacked discretion or acted outside the scope of their authority.  <u>Id.</u> at 1285 (".... WMATA officials, when exercising discretionary functions and acting within the scope of their official duties enjoy immunity from tort liability.").

Accordingly, the Court **grants** summary judgment in favor of WMATA on Count I of Plaintiff's Amended Complaint and **grants** summary judgment in favor of Johnson, Bullock, and Brown, in their individual capacities, on Count I.

11

### 2.   Claims Against Defendant Barber

Defendant Barber asserts several defenses to Plaintiff's intentional infliction of emotional distress claim, but his primary argument is that the claims are preempted by federal labor law. Barber argues that Plaintiff has brought a "hybrid breach of contract/duty of fair representation ... claim against Defendant WMATA and Plaintiff's Union, Local 689." Def. Barber's Mot. Summ. J. [#44] at 6.  Thus, Barber argues, Plaintiff's claim is preempted and must be dismissed because he failed to file a grievance within 180 days, failed to make Local 689 a party, and failed to exhaust internal union appeals before bringing the instant suit.  Id.

Barber also argues that Plaintiff's accusations are not sufficiently extreme and outrageous, as a matter of law, to support a claim for intentional infliction of emotional distress.  Id. at 7.   Additionally, he argues for dismissal on the grounds that Plaintiff has failed to submit an expert report substantiating alleged mental and emotion anguish.  Id.  Finally, Barber maintains that "punitive damages, damages for pain and suffering, refund of union dues ... are not recoverable against [him] or Local 689." Id.

### a.   Preemption

Section 66 of the WMATA Compact is a federal labor provision that governs labor disputes between WMATA and its employees.  D.C. Code § 9-1107.01(66); Office and Prof'l Employees Int'l Union,

12

Local 2 v. Wash. Metro. Area Transit Authority, 724 F.2d 133, 139
(D.C. Cir. 1983).  As a rule, state-law tort claims are preempted
by federal labor law procedures and provisions if they are
"inextricably intertwined with consideration of the terms of [a]
labor contract." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220
(1985) (holding that state-law claims that depend on interpretation
of the terms of collective bargaining agreements are preempted).
However, even when the analysis of a state-law claim involves facts
that are arguably related to a labor dispute, the claim is not
preempted if it does not require interpretation of a collective
bargaining agreement.  Lingle v. Norge Div. of Magic Chef, Inc.,
486 U.S. 399, 407 (1988).

Disposition of Plaintiff's tort claim does not require the
Court to interpret the terms of a collective bargaining agreement.
Plaintiff is suing Barber for intentional infliction of emotional
distress based on a remark by Barber that could arguably be
interpreted as a threat of violence.  See Farmer v. United Bhd. of
Carpenters and Joiners of Am., Local 25, 430 U.S. 290, 299 (1977)
("Nothing in the federal labor statutes protects or immunizes from
state action violence or threat of violence in a labor dispute.").

Therefore, the Court rejects Defendant Barber's arguments that
Plaintiff's claim is preempted, that Local 689 is a necessary
party, that Plaintiff's claims were untimely, and that Plaintiff
must exhaust his internal union appeals.

### b.    Barber's Remaining Defenses

Defendant Barber argues that Plaintiff's accusations against him are not sufficiently extreme and outrageous, as a matter of law, to support an intentional infliction of emotional distress claim.[4]   Plaintiff argues that the Court should find Defendant Barber's remark about possible injuries to be a sufficiently outrageous threat of violence.   Plaintiff also states that Barber refused to file a grievance on his behalf.   <u>See</u> Pl.'s Opp'n [#53], Exhibit 1 at ¶¶ 95.

These facts, even if undisputed and proven, would not warrant a finding that Barber's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency."   <u>Larijani v. Georgetown Univ.</u>, 791 A.2d 41, 44 (D.C. 2002) (citations and quotations omitted).   Barber's actions, taken as a whole, cannot "be regarded as atrocious ... and utterly intolerable in a civilized community."   <u>Id.</u> (citations and quotations omitted).

Accordingly, the Court **grants** summary judgment for Barber on Count I of Plaintiff's Amended Complaint.[5]

---

[4]Barber also argues that Plaintiff's failure to submit an expert report justifies dismissal, but he has not cited any authority mandating expert testimony to substantiate an intentional infliction of emotional distress claim.

[5]Because the Court grants summary judgment in favor of Barber on the sole claim brought against him, there is no need to determine available damages.

### B.    Sampson's First Amendment Claims Against WMATA

Plaintiff claims that WMATA officials violated his First Amendment rights by retaliating against him for speaking as a public person on matters of public concern.  Pursuant to 42 U.S.C. § 1983, Plaintiff seeks to enjoin WMATA's officials and managers from any future violations of his First Amendment rights.  Pl.'s Amend. Compl. at ¶¶ 53-56.

WMATA argues that Plaintiff lacks standing to bring any such claim because Plaintiff is out of work on total disability, has been on total disability for more than two years, and has proffered no anticipated return date.  Thus, according to WMATA, there is no immediate threat of retaliation against him for exercising his First Amendment rights.

In <u>Los Angeles v. Lyons</u>, 461 U.S. 95, 102 (1983) the Supreme Court held that plaintiffs seeking the type of relief at issue in the instant case must show that they face a "real and immediate" threat that the challenged official conduct will produce direct injury.  Plaintiffs may not rely on "hypothetical" or "conjectural" future injuries.  <u>Id.</u>

Plaintiff Sampson is out of work, indefinitely, on total disability.  He might or might not return to work at WMATA.  Therefore, he faces no immediate threat that WMATA will retaliate against him for engaging in any protected activity.  Accordingly, the Court **grants** summary judgment in favor of Defendants Bullock,

Brown, Johnson, Nabb, and Catoe on Count II of Plaintiff's Amended Complaint.[6]

**IV.   CONCLUSION**

For the reasons stated above, WMATA's Motion for Summary Judgement [#42] is **granted** on both counts, and Defendant Barber's Motion for Summary Judgment [#44] is **granted** on Count I.  An Order will issue with this Memorandum Opinion.

```
                              ____/S/_____
April 11, 2007                Gladys Kessler
                              U.S. District Judge
```

**Copies to**:  **attorneys of record via ECF, and**
**STEVEN MOSELEY**
**5218 Darien Road**
**Baltimore, MD 21206**

---

[6]Because the Court finds there is no immediate danger of future harm, it need not address whether Plaintiff has sufficiently alleged past First Amendment violations to justify prospective injunctive relief.